## LOWRY v. THOMPSON.

Plaintiff contracted to sell his land to the State Land Commissioner, received a small portion of the purchase money, and executed his deed, which was never delivered, but was surreptitiously taken possession of and retained by that officer, and no further payments were made. This office was abolished and all its assets directed to be turned over to the secretary of State, to be held subject to the control of the Sinking Fund Commission, which was composed of certain State officials, and this title deed thus came into the possession of the secretary of State. Upon the refusal by the commission to return this deed, plaintiff brought action against the Sinking Fund Commission for its recovery. *Held*, that the action was really against the State, and therefore was not maintainable in any of the courts of the State. *Cases reviewed.*

MR. CHIEF JUSTICE SIMPSON dissenting.

Before COTHRAN, J., Richland, July, 1884.

This was an action by James M. Lowry against Hugh S. Thompson, governor, W. E. Stoney, comptroller general, and others, as Commissioners of the Sinking Fund, for the recovery of a title deed. Upon the point decided by the court, the opinion fully states the case.

*Mr. Miles*, attorney general, for appellant.

*Mr. J. D. Pope*, contra.

November 22, 1886.   The opinion of the court was delivered by

MR. JUSTICE McIVER.   This action was brought by the plaintiff against the Commissioners of the Sinking Fund of the State of South Carolina to recover the possession of two papers in the form of deeds, purporting to be conveyances of certain tracts of land in the County of York, by the plaintiff to C. P. Leslie, as land commissioner of the said State, the consideration mentioned therein aggregating the sum of seventeen thousand five hundred and ninety-nine dollars.   The case as made for the plaintiff was, in substance, this :

Sometime in the year 1870, the plaintiff agreed to sell to the said Leslie, as land commissioner, the said tracts of land at the price named as the consideration in the said papers, to be paid in cash.   Accordingly the papers were drawn up, signed and sealed, but not delivered, and were placed by the plaintiff in the hands of one Gulick to be delivered to the said land commissioner when the balance of the purchase money should be paid, the plaintiff having previously received twenty-four hundred dollars on account thereof.   While the papers were thus in the possession of Gulick, the said Leslie applied to him for them so that they might be submitted to the attorney general for examination and approval, alleging that this was necessary in order to enable him to pay the balance of the purchase money.   Gulick delivered the papers to the agent of Leslie for the purpose of examination, with the understanding that they were to be returned to him after they had been examined.   They never were returned, but the said Leslie upon various pretexts neglected to do so, although repeated demands were made upon him for their return both by plaintiff and the said Gulick, and on the contrary, the same were surreptitiously put upon record in the proper office in York County.

By the act of February 15, 1872, the office of land comissioner was abolished, and in the second section of that act it was

provided: "That all books and papers pertaining to the office of the land commissioner be turned over to the secretary of State on and after the passage of this act. And the secretary of State shall execute the duties heretofore devolving upon the land commissioner." By the act of 1878, now section 60 of the General Statutes, it was provided: "The secretary of State shall take charge of all property of the State, the care and custody of which is not otherwise provided for by law. He shall hold the same subject to the directions and instructions of the commissioners of the sinking fund." Section 61: "Hereafter no grants of vacant lands shall be issued, except to actual purchasers of the said lands for value; and all vacant lands purchased by the late land commissioners of the State shall be likewise subject to the directions and instructions of the commissioners of the sinking fund." And then by section 62, which is but a re-enactment of the act of 1870, the several public officers mentioned in the title of this action are constituted the commissioners of the sinking fund, "to receive and manage the incomes and revenues set apart and applied to the sinking fund of the State." And by section 63, it is made the duty of the said commissioners "to sell and convey, for and on behalf of the State, all such real and personal property, assets, and effects belonging to the State, as is not in public use," with certain exceptions which need not be mentioned here, and apply the proceeds as therein directed.

It seems that the papers in question, together with the other books and papers pertaining to the office of land commissioner, were, when that office was abolished, turned over to the secretary of State, and the same are now in the possession of that officer. On October 18, 1883, the plaintiff made a formal demand upon the commissioners of the sinking fund for the papers in controversy, which not being complied with, this action was commenced for their recovery. As the secretary of State has not been made a party, the action seems to be based upon the theory that though the papers in question are in the actual possession of the secretary of State, yet they are only held by that officer as the mere hand of the commissioners of the sinking fund, and being subject entirely to their control, the action is brought against them alone, as they alone can direct the disposition of them.

The Circuit Judge held that the land commissioner originally obtained possession of these papers by fraud, and the subsequent fraudulent holding of them by that officer "followed the papers into the hands of the present defendants, his successors, who still hold, but should not be allowed to retain, possession of the same," and that the value of the papers to the plaintiff should be measured by his liability under the covenants of warranty therein, to wit: the sum of seventeen thousand five hundred and ninety-nine dollars. He therefore rendered judgment that the plaintiff do recover from the defendants the papers in question, and in case the specific property cannot be delivered up, that he recover the value thereof, to wit: the sum of fifteen thousand, one hundred and ninety-nine dollars. From this judgment defendants appeal upon the several grounds set out in the record, which need not be mentioned here. Upon the argument of that appeal the court suggested a question of jurisdiction not raised by the parties, to wit: whether the action was not, in fact, though not in form, an action against the State, and as such not maintainable in any of the courts of the State, and ordered a re-argument upon that question, which has been had.

It will be necessary, first, to dispose of the question of jurisdiction; for if it shall be determined that the court has no jurisdiction, then it would be not only unnecessary but improper to undertake to decide any of the other questions in the case.

That a State cannot be sued in any of its courts, without its express consent, which can only be given by the legislative authority, is a proposition so universally conceded as to render any argument or authority to support it wholly unnecessary. If, however, authority should be asked for, it will be found in almost every case which will be hereinafter cited, where it will be found that the proposition has either been distinctly decided or expressly recognized, and we are not aware of any authority to the contrary. As it is not pretended that any such consent was given in this case, the first inquiry is, whether this is really an action against the State. The fact that the State is not named as a party to the record is not conclusive of this inquiry, though at one time it seems to have been so held in the case of *Osborn* v. *United States Bank,* 9 *Wheat.,* 738, followed by *Davis* v.

*Gray,* 16 *Wall.,* 203; but these cases, so far as this particular point is concerned, are entirely inconsistent with the more recent decisions of the Supreme Court of the United States, where the rule seems to be now well settled that an action though in form against an officer of a State, if it is in fact a suit against the State itself, cannot be maintained even though the State is not made a party on the record. *Louisiana* v. *Jumel,* 107 *U. S.,* 711; *Cunningham* v. *Macon & Brunswick R. R. Co.,* 109 *Id.,* 446; *Hagood* v. *Southern,* 117 *Id.,* 52.

Indeed, it being universally conceded that a State cannot be sued without its consent, except in the limited class of cases in which a State may be sued in the original jurisdiction expressly granted to the Supreme Court by the constitution of the United States, it is only in cases where the State is not named as a party defendant in the record, that any real question of jurisdiction can arise; for if the State is named as a party defendant in the record, that precludes further inquiry, and the court, it is universally conceded, cannot take jurisdiction. In *Cunningham* v. *Macon & Brunswick R. R. Co., supra,* Mr. Justice Miller reviews this whole subject and admits that it is not an easy matter to reconcile the various decisions of the Supreme Court of the United States upon the subject; and while disavowing any attempt to do so, he proceeds to deduce from them certain general principles. After laying down the general principle that a State cannot be sued without its consent, except in the limited class of cases above alluded to, he says: "This principle is conceded in all the cases, and whenever it can be clearly seen that the State is an indispensable party to enable the court, according to the rules which govern its procedure, to grant the relief sought, it will refuse to take jurisdiction;" and after adding that the courts have, "in some instances gone a long way in holding the State not to be a necessary party, though some interest of hers may be more or less affected by the decision," he proceeds to classify the cases in which this has been done, as follows:

"1. It has been held in a class of cases where property of the State, or property in which the State has an interest, comes before the court and under its control in the regular course of judicial administration, without being forcibly taken from the

possession of the government, the court will proceed to discharge its duty in regard to that property.   And the State, if it chooses to come in as plaintiff, as in prize cases, or to intervene in other cases when she may have a lien or other claim on the property, will be permitted to do so, but subject to the rule that her rights will receive the same consideration as any other party interested in the matter, and be subjected in like manner to the judgment of the court.   Of this class are the cases of *The Siren*, 7 *Wall.*, 152, 157; *The Davis*, 10 *Id.*, 15, 20 ; and *Clark* v. *Barnard*, 108 *U. S.*, 436." It will be observed that in the case of *The Davis, supra,* while the lien for salvage on the personal property of the United States was fully recognized, yet it was held that such lien could not be enforced by a suit against the United States, or by a proceeding *in rem* where the possession of the property can only be had by taking it out of the actual possession of the officers or agents of the government charged therewith, but that as it appeared in that case that the property was not taken out of the possession of any officer or agent of the government, but from the common carrier to whom it had been delivered for transportation from one port to another, when the government came in and asserted its claim to the property, it would be required to discharge the lien before the property would be delivered to it.

"2. Another class of cases is where an individual is sued in tort for some act injurious to another in regard to person or property, to which his defence is that he has acted under the orders of the government. In these cases he is not sued as, or because he is, the officer of the government, but as an individual, and the court is not ousted of jurisdiction because he asserts authority as such officer. To make out his defence he must show that his authority was sufficient in law to protect him." The somewhat famous case of *United States* v. *Lee*, 106 *U. S.*, 196, is cited as belonging to this class, and to it we may add the subsequent case of *Poindexter* v. *Greenhow*, 114 *U. S.*, 270.

"3. A third class, which has given rise to more controversy, is where the law has imposed upon an officer of the government a well defined duty in regard to a specific matter, not affecting the general powers or functions of the government, but in the performance of which one or more individuals have a distinct

interest capable of enforcement by judicial process." Amongst the cases mentioned as illustrations of this class are, *Davis* v. *Gray*, 16 *Wall.*, 203, which, however, is questioned as going to an extreme limit, if not beyond it; *Board of Liquidation* v. *Mc-Comb*, 92 *U. S.*, 531; and *Osborn* v. *Bank of the United States*, 9 *Wheat.*, 738, which last mentioned case is declared to go no further than to decide: "That where a plain official duty, requiring no exercise of discretion, is to be performed, and performance is refused, any person who will sustain a personal injury by such refusal may have a *mandamus* to compel performance; and when such duty is threatened to be violated by some positive official act, any person who will sustain personal injury thereby, for which adequate compensation cannot be had at law, may have an injunction to prevent it." As a further illustration of this class we may add the recent case of *Allen* v. *Baltimore & Ohio Railroad Company*, 114 *U. S.*, 311.

We have felt warranted in making these liberal quotations from the case of *Cunningham* v. *Macon & Brunswick R. R. Co.*, because it is manifestly a well considered case, in which the whole subject is reviewed and ably treated, and the case has been distinctly recognized and followed in one of the most recent decisions of the Supreme Court of the United States—*Hagood* v. *Southern, supra.*

It may be well to mention here that the title of the case (*United States* v. *Lee*) much relied on to support the jurisdiction in this case, as it is designated in the reports and usually cited, is well calculated to mislead, by conveying the impression that the United States was a party to the action in that case. The fact, however, is otherwise. The action was brought against Kaufman and others, as individuals, in the State court and removed to the Circuit Court of the United States. Thereupon the attorney general filed a suggestion, setting forth certain facts upon which he claimed that the court could not take jurisdiction of the case, and moved to set aside all the proceedings for want of jurisdiction, saying expressly that he appeared only for the purpose of such motion. The plaintiff having recovered judgment in the Circuit Court, two writs of error were sued out—one in the name of the United States, and the other in the name of Kaufman and others,

the defendants against whom judgment was rendered. That the United States was not a party, is apparent from the following language used in the opinion of the court: "As the United States was not a party to the suit below, and while defending the action by its proper law officers, expressly declined to submit itself as a defendant to the jurisdiction of the court, there may exist some doubt whether it has a right to prosecute the writ of error in its own name; but as the judgment against Kaufman and Strong is here on their writ of error, under which all the questions are raised which could be raised under the other, their writ being prosecuted in the interest of the United States, and argued here by the solicitor general, the point is immaterial, and the question has not been mooted." The whole decision shows clearly that the case turned entirely upon the question whether *an individual* who, when sued for a trespass, undertakes to justify under the title of the United States, can maintain such defence without establishing the validity of such title. It is clear, therefore, that this case was properly placed by Mr. Justice Miller in the second class, when, in *Cunningham* v. *Macon & Brunswick R. R. Co.*, he was classifying the various cases in which the court could take jurisdiction.

Now let us examine the case presented for our determination in the light of these decisions of the Supreme Court of the United States, to which we have resorted in the absence of any cases in our own State upon the point involved. It certainly cannot be pretended that the case falls within either the first or third of the classes in which Mr. Justice Miller arranged the cases in the case of *Cunningham* v. *Macon & Brunswick R. R. Co.*, and we think it equally clear that it does not fall within the second class. The action is not brought against the defendants *as individuals* for a tort, from which they are seeking to defend themselves by some act or order of the State government; but the action is brought against them *as* commissioners of the sinking fund to recover property alleged to be in their possession *officially*. Indeed, the person or officer, the secretary of State, who, it is conceded, has the actual possession of the property, has not been made a party to the action, and the claim against the defendants as officers or agents of the State government is rested solely upon

the ground that the secretary of State, who has the actual pos-
session of the property, holds it "subject to the directions and
instructions of the commissioners of the sinking fund," who are
therefore sued as the only parties having the right to control the
disposition of the property in question.

Now, unless the property is held and claimed as the property
of the State, it is very manifest that the defendants, as commis-
sioners of the sinking fund, have nothing whatever to do with it,
and never having had it in their actual possession, they would
not, on that ground, be amenable to an action for its delivery.
For the act (section 60 of the General Statutes) only requires
the secretary of State to take charge of "*the property of the
State*" and hold "*the same*" subject to the directions and instruc-
tions of the commissioners of the sinking fund," and hence if the
property in question is not held and claimed as the property of
the State, then it is clear that the commissioners of the sinking
fund have nothing more to do with it, and are under no more
responsibility for it than for any other property of a third person
which may happen either wrongfully or accidentally to be in the
actual possession of the person who holds the office of secretary
of State.  If, then, the property is to be regarded as in the offi-
cial possession of the secretary of State, held and claimed as
the property of the State, and as such subject to the control of
the commissioners of the sinking fund, it would seem to be clear
that the action is, in fact, though not in form, an action against
the State itself; for in such case, as the State can only hold pos-
session of personal property by or through an officer or agent,
the possession of the officer or agent is the possession of the
State, and the State is an indispensable party to any contest for
the right of possession.

Even if the possession of the State was originally acquired by
some wrongful act of some one of its officers or agents (though it
is difficult to see how this could be judicially determined until
the question of jurisdiction is first disposed of), still no action
could be maintained by the rightful owner to recover possession
against an officer of the State government holding and claiming
the property as the property of the State when sued as such;
because in such case, the State being the real party in interest,

would be an indispensable party to the action, and as she could not be made a party without her consent, the action could not be maintained in any court, and the claimant would be remitted to his remedy by petition to the legislature, just as in the case of all other claims against the State, where, if his claim be well founded, it is not permissible to doubt he would receive ample justice. If, however, the action should be brought against the person in possession *as an individual,* and he, in his defence, seeks to justify his possession by alleging title to. or right of possession in, the State, then, as in the case of *United States* v. *Lee, supra*, he. must establish such title or right of possession, and if he fails to do so, judgment goes against him *as an individual.*

The reason for the distinction is obvious. In the former case the party in possession being sued *as an officer*, judgment can only go against him as such, and not against him as an individual, for he is not sued as such; and as the only property which he holds as an officer is the property of the State, it is clear that the State is the real party in interest, as it is out of her property alone that the judgment sought to be recovered can be satisfied. But in the latter case, where the party in possession is sued as an individual, the judgment can only be enforced against the individual property of the defendant, and the State is not necessarily interested and is not therefore the real party in interest. Take this very case as an illustration. Suppose it should become necessary to enforce the alternative money decree, against whose property could it be enforced? Certainly not against the individual property of the persons named as defendants, for no claim against them as individuals has been established. If it is proposed to enforce such judgment against the property held by them as commissioners of the sinking fund, the answer would be that all of the property so held is the property of the State, which, of course, even if the State enjoyed no more exemption from suit than a private citizen, could not be reached under such judgment, as she was not a party to the action in which the judgment was recovered, according to the only theory upon which the action could be maintained. True, it may be said that it is not likely that it will be necessary to enforce the alternative money decree;

but that cannot affect the legal question involved. If the judgment is a valid one at all, it is just as valid in the one alternative as in the other; for if the court had jurisdiction of the case, the judgment as rendered was not only authorized, but required by the conclusions as to the facts and the law reached by the Circuit Judge. It seems to us, therefore, that the fact that the judgment rendered in this case cannot, in one of its alternatives, be enforced, because it goes against the property of the State, shows conclusively that the action was in fact, though not in form, an action against the State, of which neither this court nor the court below has any jurisdiction.

The cases of *The State* v. *The President and Directors of the Bank of the State of South Carolina*, 1 *S. C.*, 63; *Dabney, Morgan & Co.* v. *The Bank of the State*, 3 *Id.*, 124; *Bank of the United States* v. *The Planters Bank*, 9 *Wheat.*, 904; *Bank of Kentucky* v. *Wister*, 2 *Peters*, 318; *Briscoe* v. *Bank of Kentucky*, 11 *Id.*, 257; *Darrington* v. *State Bank of Alabama*, 13 *How.*, 12; and *Curran* v. *State of Arkansas*, 15 *Id.*, 304, relied on by the counsel for the plaintiff, have all been carefully examined, and do not appear to us to be applicable to the present inquiry. These cases, so far as we are at present concerned with them, only decide that the fact that a State owns a part or the whole of the stock of a banking corporation, does not exempt *such corporation* from suit under the rule that a State cannot be sued without its consent. Aside from the fact, which of itself would be conclusive of the inapplicability of these cases, that in most, and probably all of them, the charters of the corporations contained express provisions that they could sue and *be sued*, it is well settled that, in the eye of the law, a corporation and the individuals who compose it are totally distinct and different persons. Hence an action against a corporation can never be regarded or treated as an action against the individuals who hold its stock. Without some special provision in the charter to that effect, or some general law of the State, the individuals who compose the corporation are not only not to be regarded as parties to an action brought against it, but their individual property could not be reached under a judgment against the corporation. From this it follows naturally and logically that when an artificial person

called a corporation is brought into existence, it, like all other persons, natural as well as artificial, may be subjected to the process of the courts, and the fact that its stock is owned in part or in whole by the State, confers upon it no exemption from suit, as the corporation and the persons who compose it are totally distinct and different persons.

It is argued, however, that when the State established the office of land commissioner, who was charged with certain specific duties, to wit: the buying of lands and selling them in small parcels to actual settlers, and set apart a fund, the proceeds of the sale of bonds issued for that purpose, to be used in paying for the lands so purchased, that fund was as much separated from the other funds of the State and placed under the control of the land commissioner, as the capital provided for the Bank of the State was separated from the other funds of the State and placed under the control of the president and directors of that institution, and that as the latter was subject to suit in the courts of the State upon any contract made by them, so could the former, as the State, in such case, could not be regarded as a necessary party to the action, and hence no exemption from suit on that account could be claimed. It will be observed, however, that the land commissioner, neither singly nor in conjunction with the advisory board, was ever constituted a corporation while the bank was, and therefore the analogy would not hold good.

But even assuming, for the purposes of this inquiry, that the land commissioner could, in his own name, sue or be sued upon any contract made by him in the performance of his official duties, it must be remembered that that office has long since been abolished, and all the funds and property pertaining thereto have been placed in the hands of the secretary of State, along with all the other property of the State, the custody of which is not otherwise provided for by law, and hence such funds and property are no longer separated from the other assets of the State, but along with such assets are directed to be applied to the payment of the debt of the State. There is, therefore, now no longer any separate agency entrusted with a specific fund, in regard to which such agency can contract and be contracted with, as was formerly the case in reference to the land commissioner and the Bank of

the State.    So that, besides the fact that the land commissioner was never made a corporation as the Bank of the State was, there is this additional objection to the view contended for by the plaintiff.    The State has resumed the possession and control of all the assets heretofore entrusted to the land commissioner for a specific purpose, and has appropriated these assets, along with others, to the general purpose of the payment of the public debt.

If, however, in resuming the possession and control of the books and papers heretofore entrusted to the land commissioner the State has acquired the possession of any property belonging to the plaintiff, upon which the State has no rightful claim, this court cannot permit itself to doubt, that upon a showing to that effect made in the proper way for a claim against the State to be presented, that restitution will be made upon such terms as are just; but no action against the State or any officer thereof entrusted with the custody of such property, can be maintained in the courts of this State for want of jurisdiction.

Having reached the conclusion that neither this court nor the court below has any jurisdiction of this case, because it is in fact though not in form an action against the State, we have no authority to consider any other question arising in the case, and anything which we might say would be an extra-judicial utterance, in which this court has no disposition to indulge.

The judgment of this court is that the judgment of the Circuit Court be reversed, and that the complaint be dismissed for want of jurisdiction, without prejudice as to the merits of the claim.

MR. JUSTICE McGOWAN concurred.

MR. CHIEF JUSTICE SIMPSON, *dissenting.*    The action below was brought to recover certain personal property claimed by the plaintiff, and alleged by him to be in the wrongful possession of the defendants, as commissioners of the sinking fund, upon whom a demand had been made and refused.    The defendants admitted in substance that they, as said commissioners, had control of the property sued for, and they claimed that the title to said property was in the State; that they held as trustees for the State, and were not authorized to deliver it to the plaintiff until the rights and equities of the State in the premises should be judi-

cially determined, setting up a counter-claim against the plaintiff for some $3,000. Judgment below was for the plaintiff on the merits. On appeal to this court by the defendants, for the first time a question of jurisdiction was raised to determine which a re-argument was ordered on the single point, to wit: whether or not the action below, though not in form, was yet in substance and fact an action against the State. Upon this re-argument my brethren having determined that the action is against the State, have adjudged that the complaint be dismissed for the want of jurisdiction. In this opinion I have not been able to concur for the reasons following:

I do not deny the legal proposition that the State cannot be sued in the courts of this State, except by its own consent. This doctrine is too well settled and too firmly established to intimate even a doubt in reference thereto. And I fully concur in its correctness. But I take issue with the majority on the proposition that the State has been sued, or is in any way a party to the action below, and I therefore fail to see the applicability to the case of the principle that the State cannot be sued, upon which the complaint has been ordered to be dismissed.

The question, then, is, was the action below against the State in such sense as on that account it should be dismissed, the State not having consented to be sued? It is nowhere contended that the State is named as a party on the record, nor has there been any attempt to summon her by the service of any process, nor has she voluntarily appeared as one of the defendants. It is said, however, that the State may still be regarded as a party to the issue involved, to wit: title to the property in question is really between the plaintiff and her, notwithstanding she is not named in the record, and no effort has been made by the plaintiff to make her a party. The only cases where this question has been raised are certain cases heard and decided in the Supreme Court of the United States, and I concur with the statement in the majority opinion that these cases are not entirely consistent with each other.

In *Osborn* v. *The U. S. Bank*, 9 *Wheat.*, 739, the bank instituted proceedings against Osborn, auditor of the State of Ohio, to restrain him from enforcing an act of the State of Ohio against the

bank in reference to collecting certain taxes imposed by the act. One of the positions taken in the case was: "That in fact the bill was against the State, and as such the Circuit Court had no jurisdiction." This point (which is the exact point here) seems to have been fully considered by the Supreme Court on appeal. It was conceded on all sides that the defendants on the record had no personal interest whatever in the suit, and that their connection therewith was simply official as agents of the State of Ohio, and that the State alone was really interested in the result. With this fact admitted, Chief Justice Marshall, in delivering the opinion of the court, after fully discussing the question whether the jurisdiction of the court as to the parties depended upon the character of those whose interest is litigated, or of those who are parties to the record, concludes the discussion of that branch of the case, with the following emphatic declaration: "But the principle seems too well established to require that more time should be devoted to it. It may, we think, be laid down as a rule which *admits of no exception*, that, in all cases where jurisdiction depends on the party, it is the party named on the record." And further: "The State not being a party on the record, and the court having jurisdiction over those who are parties on the record, the true question is, not one of jurisdiction, but whether, in the exercise of its jurisdiction, the court ought to make a decree against the defendants, whether they are to be considered as having a real interest, or as being only nominal parties." This case was decided by the Supreme Court of the United States in 1824, the precise question involved here being involved there. The court held that the State of Ohio not being named as a party on the record was no party to the suit, although her rights and interests were alone involved, and being no such party, the jurisdiction of the court was not ousted. Therefore the case proceeded to judgment against Osborn, the auditor.

In *Davis* v. *Gray*, 16 *Wall.*, decided in 1872, the doctrine of *Osborn* v. *The Bank of the United States* was distinctly affirmed and the principles re-declared in terms as follows, to wit: "That where the State is concerned the State should be made a party if it can be done. That it cannot be done is a sufficient reason

for the omission to do it, and the case may proceed to decree against her officers in all respects as if she were a party to the record;" that in deciding who are parties to the suit, the court will not look beyond the record; that making a State officer a party does not make the State a party, although her law prompt his action, and she may stand behind him as the real party in interest; that a State can be made a party only by shaping the bill expressly with that view, as where individuals or corporations are intended to be put in that relation to the case." And Mr. Justice Swayne, in delivering the opinion, refers to *Dodge* v. *Woolsey*, 18 *How.*, 331; *The State Bank of Ohio* v. *Knoop*, 16 *Id.*, 369; *The Jefferson Branch Bank* v. *Skelly*, 1 *Black*, 436; *Ohio Life & Trust Co.* v. *Debolt*, 16 *How.*, 432; and the *Mechanics & Traders Bank* v. *Debolt*, 18 *Id.*, 380, as proceeding upon the same principles and controlled by the authority of *Osborn* v. *U. S. Bank*, *supra*, with respect to the jurisdictional question arising in each of those cases as to the defendants.

It is said, however, in the majority opinion, that these cases are inconsistent with the recent cases from the Supreme Court of the United States, and especially with the cases of *Louisiana* v. *Jumel*, 107 *U. S.*, 711; *Cunningham* v. *Macon & Brunswick R. R. Co.*, 109 *Id.*, 440; and *Hagood* v. *Southern*, 117 *Id.*, 52. It may be that these latter cases, especially *Louisiana* v. *Jumel*, and *Cunningham* v. *Macon & Brunswick R. R. Co.*, cannot be fully harmonized with the cases referred to above, but those older cases were not overruled by these latter ones. On the contrary, in the opinion of the court in each of these latter cases the former ones, especially *Osborn* v. *Bank* and *Davis* v. *Gray*, the two leading cases on that line, were recognized and the principle which governed therein distinguished from said latter cases, leaving both classes standing and of force. In *Hagood* v. *Southern*, *supra*, Mr. Justice Mathews, after discussing the principle applied in a class of cases to which *Osborn* v. *The Bank* belonged, as compared with the case then before the court, said: "A broad line of demarcation separates from such cases as the present (*Hagood* v. *Southern*) in which the decrees require, by affirmative official action on the part of the defendants, the performance of an obligation which belongs to the State in its political capa-

city—those in which actions at law or suits in equity are maintained against defendants who, while claiming to act as officers of the State, violate and invade the personal and property rights of the plaintiff under color of authority, unconstitutional and void,'' &c.

With the cases from the Supreme Court of the United States then standing in this way, I do not think it can be successfully claimed that that court has established the principle even for its own government, that where the issue involved is one between a State alone and the plaintiff, the defendants being only agents and officers of the State and asserting the rights of the State, that the State in every such case must be regarded as a party, thereby ousting the jurisdiction of the court, although she is not named on the record as a party. On the contrary, I think that each case as to this question must depend upon its own facts, the fact of the State being held a party or not, depending upon the further fact, whether the suit is intended, on the one hand, to enforce by affirmative official action on the part of the defendants the performance of an obligation which belongs to the State in its political capacity, or, on the other, is to redress or restrain the violation of some personal or property right, inflicted or threatened under the color of official authority. If the case belongs to the first class, then under the principle of *Louisiana* v. *Jumel, Cunningham* v. *Macon & Brunswick R. R. Co.,* and *Hagood* v. *Southern, supra,* the Supreme Court of the United States no doubt would hold, that the State, though not named as a party, would still be held to be a party sufficiently so to oust the jurisdiction. But if it belonged to the second class, under the authority of *Osborn* v. *The United States Bank,* and *Davis* v. *Gray, supra,* it would allow the action to proceed, at least to the point of determining whether the defendants were rightfully acting under and by the authority of the State; or, rather, whether the right asserted by them for the State rested upon a sound foundation.

In my opinion, the case below belonged to this latter class. It was an action to redress an alleged wrong inflicted upon the property rights of the plaintiff under the color of official authority, and the State not being named as a party, nor any process

prayed, or attempted against her, she is no party—certainly not in such sense as to demand a dismissal of the complaint for the want of jurisdiction.

The majority opinion, however, is based more especially upon the case of *Cunningham* v. *The Macon & Brunswick R. R. Co.,* *supra,* in which Mr. Justice Miller in delivering the opinion of the court, after laying down the doctrine: "That wherever it can be clearly seen that the State is an indispensable party to enable the court, according to the rules which govern its procedure, to grant the relief sought, it will refuse the jurisdiction," which he says is a conceded principle in all the cases; and after adding, "that the courts have gone a long way in some instances, in holding the State not to be a necessary party, though her interest may be more or less affected," proceeds to classify the cases in which this has been done, dividing the cases into the three classes mentioned in the majority opinion. My brethren adopt this classification, and they undertake to show that the case at bar does not belong to either of these classes. This, it appears to me, is changing the question before the court. The question before us is not whether the court can proceed to judgment without the State being a party, but it is whether the State is a party. The question whether we can pronounce judgment against the defendants in the absence of the State, appears to me to be a very different question from whether the State is a party. In the latter case, which is the question that has been discussed before us, if the State is held a party, then the jurisdiction is gone at once without further argument or investigation; but in the former case, the merits are somewhat involved, and must be examined before a judgment can be reached.

In this view of the matter it does not seem to me, so far as the question before us is concerned, to be very material, whether or not the case at bar belongs to either of the classes mentioned by Mr. Justice Miller. But suppose that it does not belong to either one of these classes. Does it follow necessarily, that the court could not proceed to judgment, the State being absent? I do not understand that Mr. Justice Miller excludes every other case except those belonging to one or other of the classes mentioned by him. He simply classifies the cases in which the court has

heretofore acted, and declares that in those cases the jurisdiction of the court has been maintained; but he does not hold, that these are the only cases in which that jurisdiction could attach.

But is it clear that the case at bar is outside of the classification as it stands? Is it not embraced in the principle of the second class? To the second class belongs *United States* v. *Lee* (106 *U. S.*, 196), and cases of that character, where officers and agents of the government are sued for property which they hold not in their own individual right, but as officers and agents, and their defence is title and possession in the government, and not in themselves personally. That was the case of the *United States* v. *Lee*, where the defendants were holding "Arlington" as the agents and officers of the United States, and had been thus holding for ten years or more, as public property—a national cemetery. They were sued for possession by Lee. The United States interposed by its attorney, claiming that the United States was a party, or rather was an indispensable party, and the United States could not be sued; that the court therefore had no jurisdiction and could not proceed. The court held otherwise, and the case went to judgment, in favor of Lee.

Now, the facts in that case are almost identical in their character with the facts here. Here the plaintiff sues for personal property, the title of which is evidently in him. The defendants admit possession, they do not deny that that possession reached them through an illegal act of the former land commissioner. as charged in the complaint, but they claim that they are holding not in their own right, but for the State, who has a claim against the plaintiff, which they demand should be settled before they are required to deliver to him his property. These are the facts. How do they differ in character from those in *United States* v. *Lee?* I can see no difference.

But it is said there is a difference in the character of the actions in the two cases; that in *Lee* and *United States*, the action was against the defendants as individuals, and not as officers and agents, and that in the case below the action was against the defendants as officers and agents, and not as individuals. That is true. There is that difference between the cases, but does that demand the application of different principles to

facts which are nearly the same?  In *Lee* and *United States*, the court held, that the defendants could not oust the jurisdiction of the court by interposing the defence that they were officers, and holding entirely for the government, which was a known and admitted fact.    This being so, how can that jurisdiction be affected, when they are sued as such officers?    What difference can it make, whether the character of the holding appears from the plaintiff in his complaint, or from the defence set up in the answer of the defendants?    The principle set up in *Lee* and *United States* was, that holding for the State did not in itself, and *proprio vigore*, oust the jurisdiction of the court, preventing all further investigations; but that, in such case, the action should proceed until it was determined that the holding was rightful and legal.

I cannot  see why that principle should not still apply in a case like that before the court, where the plaintiff alleges that the defendants are in  possession of his property, as  State officials, claiming for the State, but that they are wrongfully so, because his title is better than that of the State, and where the defendants admit that they are holding for  the  State, claiming  title  in  the State.    There can be no doubt that the same principle is involved in each of the cases, to wit: whether the defendants' claim is founded on legal grounds, which can only be determined by assuming jurisdiction and by investigating the question.    It is admitted that this can  be done where  the matter of the right of the State is set up as a defence by the defendants, when sued as individuals, but it is denied, where the character of the holding is alleged in the complaint (because such are the facts of the case), and the defendants are sued as officials.    It appears to me that this would be technical to an extreme degree, and subversive of right and justice.

I do not think that the State is a party to the action.    Nor do I think that it is indispensable that she should be a party, so as to enable the court to render a judgment—the court having jurisdiction of the defendants, against whom a judgment may be made, the State still having the right to assert her claim, if any. I therefore cannot concur in the majority opinion.

Judgment reversed.