## NEAL, SUPT., v. SUBER.

1. PARTNERSHIP—CROPS—JURISDICTION.—THE COURT OF EQUITY is the proper tribunal to settle the disputes growing out of a partnership, and out of joint ownership of crops.

2. ISSUES OUT OF CHANCERY—DISCRETION.—Submitting issues to a jury, under Code, 274a, and Circuit Court Rule XXVIII., is within discretion of Circuit Judge, and will not be disturbed on appeal unless discretion is abused.

3. DAMAGES—ACCOUNTING—CROPS.—COUNTER-CLAIM for damages to an action for accounting between joint owners of crops, properly ruled out on demurrer under contract and facts in this case.

4. REHEARING refused.

Before GAGE, J., Richland, July, 1898. Affirmed.

Action for appointment of receiver and for accounting by W. A. Neal, superintendent State Penitentiary, against Joel W. Suber, and continued against Charles W. Suber, administrator. The following is the Circuit decree, less the formal parts:

This is an action at law, begun in November, 1896, by the plaintiff against one Joel W. Suber. That defendant having died, C. W. Suber, his administrator, was substituted in his stead. Many orders have been made in the cause, and it now comes for a final hearing on testimony taken before the master. The cause of action stated in the complaint is a contract between the parties to work a crop on shares for the year 1896; the plaintiff to furnish the labor, the defendant to furnish the implements, live stock and land; the crops to be equally divided between the parties. The answer admits that the action is brought in behalf of the State Penitentiary; admitting practically the existence of the contract, but alleges that it was a contract for three years, to wit: 1894, 1895, and 1896; sets up a counter-claim for $5,000 damages caused by the plaintiff's failure and refusal to furnish the proper labor to cultivate the crops; asks to hold the proceeds of the crop of 1896 to reimburse him

for such damages. (This last defense was plead by way of amendment to answer granted at the hearing.)

The plaintiff demurred to the counter-claim, upon the ground it was in effect a suit against the State. I sustain the demurrer upon the authority of *Treasurer* v. *Cleary*, 3 Rich., 373; *State* v. *Baldwin*, 14 S. C., 138; *State* v. *Corbin*, 16 S. C., 540. The counter-claim is a suit by Suber against the State Penitentiary; a judgment could be paid only out of the State's resources; the State's resources are under the exclusive jurisdiction of the General Assembly. This is no hardship on defendant; every citizen who contracts with the agents of the State, as such, takes notice of the State's immunity from suit. The rule is a wise one. The revenues of the State would be subject to grievous hindrances if they could be litigated by every citizen in the Courts of the State.

Now to the issues. There was a contract between the parties, like that referred to, extending through three years, to wit: 1894, 1895, 1896. There is no dispute about the crops raised in 1894; they were divided, and at the end of that year the parties were even, by their own admissions. The plaintiff did not put the transactions of 1895 in issue; the defendant did. But I find that the parties divided the crops of that year, each getting his share. To my mind, this fact is conclusive proof against the defendant's claim of damages for the year 1895. I am unable to believe that the defendant, with a manifest wrong done him, and with the remedy in his hand, would have surrendered the remedy up to the wrong doer without recompense. I, therefore, exclude from this contention all the transactions before 1896, and confine my investigations to that year.

The master has taken on separate sheets the testimony tending to establish the counter-claim. This was done pursuant to Judge Townsend's order, dated 29th April, 1898. I have allowed the defendant to amend his answer by changing the allegations of paragraph three thereof. I did this because it was in the interest of justice, and could not injure the plaintiff. The amendment, in effect, abandons the

counter-claim, but sets up the legal right to hold the property already in defendant's hands to satisfy the wrong done to defendant by plaintiff's acts. The interesting question is presented, can the defendant, under this amendment, get the same relief denied him when named counter-claim? The defendant's demand is no less a counter-claim, because it is not so termed, and because it is limited to the fund in hand. Its nature is the nature of a counter-claim, and it can be nothing else. But the rule of law that a State cannot be sued in its own Courts without its consent, has been modified in many instances. It is impossible to state the rule and all of its limitations, and I shall not attempt it. See 43 S. C., page 168. The rule is not enforced where it would lead to manifest wrong, if there is any way to escape it. That is the only reason I can see for its evasion. For example, in this case, assume that the plaintiff did agree to furnish the labor in dispute, and assume he furnished only one-tenth of what was agreed upon, can he claim for the State one-half of the crops, and shelter himself behind the State's sovereignty? I think not, on plain principles of justice. If that be so, must he not share in the loss to the extent that his acts produced it? I think so. And now comes the difficult questions of fact, to wit: What was the contract, so far as it referred to the amount and character of labor? If it has been broken by plaintiff, what is the damage? These are questions for a jury, as was the whole issue of fact herein; there is no element of equity in the case; it is not a suit to settle a partnership account; it is a simple suit upon a contract to work a crop on shares. But the matter was referred, without objection apparent on the record, and to save delay and further expense, I will undertake to decide the issue. I am satisfied the plaintiff agreed to furnish the labor necessary to work the land, that the bulk of the labor was to be convict, but that plaintiff might supplement it with free labor, should the exigency of the occasion require it. I am satisfied the defendant agreed to furnish the live stock, implements, fertilizers and land; and there is no con-

tention that he failed in any of these undertakings. But how much labor did the plaintiff undertake to furnish? The complaint is indefinite, the answer alleges twenty able-bodied men, and more for emergency. In the nature of the case, that matter was a prime element of the contract. The parties must have contracted with reference to it. What does the testimony show? The plaintiff's own testimony fixes the amount of labor at from fifteen to twenty hands as a minimum, and more as the crops needed labor. I find the minimum number of hands agreed on was twenty. The testimony of both parties shows the actual number furnished was short of the twenty hands agreed on; and the testimony of both shows that the number was twelve. That is the average of the totals testified to by both sides. The testimony of plaintiff shows the average number of hands furnished by him under the same contract in 1894 was twenty-two, and in 1895 was fifteen. Did the plaintiff make good the deficiency in hired labor? His account rendered shows that he paid for hired labor in 1895 the sum of $700, and in 1896 the sum of $400. So that he did not supply the deficiency. I conclude, therefore, that the plaintiff did not perform his part of the contract to the letter, as he was bound to do. Now what is the damage? Certainly not the entire crop. Each party must get what they paid for, and each must bear the loss he occasioned. I have not the methods of a jury to strike a just average in this matter, for I must assign some reason for my finding. I will let the $400 expended in hired labor by the plaintiff stand for three hands, thus making fifteen hands furnished by plaintiff. Thus the total force was thirty-five hands to make a crop, of which plaintiff supplied fifteen in kind, and the defendant supplied what the parties agreed to be equal to twenty hands. The plaintiff is entitled to 15-35 of the crop, and the defendant is entitled to 20-35 thereof, or 3-7 and 4-7 respectively.

From this decree defendant appeals.

*Messrs. W. S. Monteith* and *John T. Seibels,* for appel-

lant. The latter cites: *Defendant's amended answer did not set up a counter-claim but only a defense to amount of fund in hand, and the demurrer could not apply to this:* 10 S. C., 185; Code, 161. *The Court has jurisdiction of this defense, notwithstanding rights of State, because confined to funds in hand:* 109 U. S., 446; 74 U. S., 157; 77 U. S., 20; 108 U. S., 436; 43 S. C., 168; 23 Fed. R., 117; 3 Hughes, 62; 9 Bush., 708.

*Messrs. Attorney General W. A. Barber* and *Abney & Thomas, contra. Jno. P. Thomas, Jr.,* cites: *Order of reference to take testimony only may be passed without consent of parties:* 21 S. C., 371; 33 S. C., 394; 50 S. C., 514; 27 S. C., 418. *In equity case, framing of issues is discretionary with Judge:* Code, 274*a;* 27 S. C., 418; 5 S. C., 412; 35 S. C., 417; 34 S. C., 174. *Demurrer to counter-claim properly sustained:* 3 Rich., 373; 14 S. C., 138; 16 S. C., 540. *If a contract becomes in part impossible by reason of a change in the law, it is to that extent discharged:* 4 N. Y., 413; 5 S. C., 210.

The opinion in this case was filed on June 22, 1899, but on petition for rehearing remittitur was stayed until

November 29, 1899. The opinion of the Court was delivered by

MR. JUSTICE GARY. The appeal herein is from a decree of his Honor, Judge Gage, which will be reported. Upon the hearing of the case in this Court, the appellant's attorney stated that he did not specially urge the 11th and 12th exceptions.

It will not be necessary to consider the exceptions *seriatim,* as they practically present but three questions, the first of which is as follows: Is this a case on the law or equity side of the Court? The parties to the contract either were partners or joint owners of the crops. If they were partners, the Court of Equity was the appro-

priate tribunal for winding up and settling the disputes growing out of the partnership; and if they were joint owners of the crops, the Court of Equity was likewise the proper forum in which to seek partition thereof. Pom. Eq. Jur., sec. 1391; Freeman on Cotenancy, sec. 426. The case was, therefore, properly triable by the Court in the exercise of its equitable jurisdiction.

The next question is whether there was error in refusing to submit issues to a jury. By reference to section 274*a* of the Code, and Rule XXVIII. of the Circuit Court, it will be seen that the motion was addressed to the discretion of the presiding Judge, and the facts in the case do not show that it was abused. The exceptions raising this question are overruled.

The last question is whether the presiding Judge erred in deciding that the defendant's counter-claim could not be sustained. The view which the Court takes of this question renders unnecessary the consideration of the distinction between a counter-claim and a set-off. In the complaint it was alleged: "that it was mutually understood and agreed that should at any time during the working season of 1896, the defendant have need upon said plantation for more convict laborers than could be supplied by the said plaintiff and board of directors from the prisoners at the penitentiary available for said purpose as aforesaid, in that event the deficiency in convict laborers was to be supplied by the employment by the defendant of free laborers at such compensation as should be fixed by him, the wages of said free laborers to be paid by the plaintiff upon the request of the defendant." These allegations were sustained by the testimony. The defendant agreed to employ free laborers at the expense of the plaintiff, if they were needed, and there is no testimony that his failure to employ free laborers was caused by any act of the plaintiff. The defendant could not hold the plaintiff liable under these circumstances, and the demurrer to the counter-claim was properly sustained.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

Petition for rehearing was filed July 3, 1899, and remittitur stayed until further order of Court. On November 29, 1899, the petition was refused and remittitur ordered down.