20830

KINSEY CONSTRUCTION COMPANY, INC., Respondent, v. SOUTH CAROLINA DEPARTMENT OF MENTAL HEALTH, Appellant.

RELIANCE INSURANCE COMPANY, Respondent, v. SOUTH CAROLINA DEPARTMENT OF MENTAL HEALTH, Appellant.

(249 S. E. (2d) 900)

*Atty. Gen. Daniel R. McLeod* and *Asst. Attys. Gen. A Camden Lewis* and *Nathan Kaminski, Jr.,* Columbia, *for appellant.*

*Michael H. Quinn,* Columbia, *for respondent.*

December 6, 1978.

*Per Curiam:*

Plaintiffs-respondents, Kinsey Construction Company, Inc. (Kinsey) and Reliance Insurance Company (Reliance), instituted separate actions against the South Carolina Department of Mental Health (the Department), seeking recovery for an alleged breach of a building contract. The Department appeals from a lower court's order overruling their Department's demurrers to the breach of contract causes of actions. Since the issues involved are identical, the cases were consolidated for purposes of this appeal.

On November 6, 1972 the Department and Phillips Construction Company (Phillips) entered into a lump sum contract in the amount of $2,665,507.00 for the construction of an alcoholic and drug addiction center in Richland County, South Carolina. Subsequently, Reliance executed and delivered to the Department a performance bond and a labor and material bond. The contract was later assigned by Phillips to Kinsey, with the written consent of the Department. Kinsey remained the prime contractor until December 1974. Thereafter, in February 1975, Reliance and the Department by written memorandum, agreed that Reliance would undertake to complete the work, and Reliance nominated Kinsey to perform its obligations. These actions resulted by reason of the Department's refusal to accept the work of Kinsey as complete.

Two grounds of demurrer are at issue in this appeal. Initially the Department argues its demurrer should be sustained because as an agency of the State of South Carolina, it enjoys immunity from suits *ex contractu*. Secondly, the Department asserts its demurrers should have been sustained

on the ground that Article III, Section 30 of the South Carolina Constitution precludes suits in contracts for damages above the contract price.

With respect to the question of sovereign immunity this Court has often held that the State cannot be sued without its consent. See *Lowry v. Commissioners of Sinking Fund,* 25 S. C. 416, 1 S. E. 141; *State v. Corbin,* 16 S. C. 533. *Harris v. Fulp,* 178 S. C. 332, 183 S. E. 158 further supports the proposition that sovereign immunity applies in actions *ex contractu.* However, while we concur with the appellant's assertion that absent a waiver of immunity an individual cannot maintain an action against the State; we do not agree that a waiver of sovereign immunity can only be obtained from a self-executing provision of the Constitution or by express statutory enactment. 72 Am. Jur. (2d), States, Territories, and Dependencies, Section 118, contains an apt statement of the principles controlling the case at bar.

. . . [W]here the legislature has by statute authorized the State to enter into certain contracts, the State, by entering such a contract, thereby consents to be sued if it breaches the contract to the damage of the other contracting party.

Thus, when a State secures to itself the benefits of a contract, it implicitly assumes the corresponding liabilities.

Our conclusion that the State may impliedly waive its sovereign immunity and consent to be sued for alleged breaches of its contractual responsibilities finds support in the case of *Chesterfield County v. State Highway Department,* 181 S. C. 323, 187 S. E. 548. There, Chesterfield County brought an action in the original jurisdiction of this Court seeking a Writ of Mandamus compelling the State Treasurer to turn over certain bonds purchased from Chesterfield County pursuant to a contract with the State. The question presented was whether mandamus was appropriate under the circumstances. Although the Court concluded Chesterfield County possessed an adequate

remedy at law and denied its petition, the county was granted a rehearing. In affirming the right of Chesterfield County to litigate the questions of law this Court concluded:

The statutes of the state (Code 1932, Section 5937 *et seq.*) authorize the county and the highway commission to enter into what are called reimbursement agreements, of the nature of that made between Chesterfield County and the highway commission. In other words, the parties are authorized to enter into a contract. *It is true that the statutes which authorize the making of the contract do not in express language confer upon either contracting party the power to sue the other for breach of contract. But the right is one of necessary implication; it is a common-law right.* (Emphasis added).

Section 5874, Code 1932, authorizes the highway commission to purchase gasoline and fuel. Suppose contracts for such purchases are made by the commission and it refuses or neglects to pay for the articles purchased. *Will it be contended that it cannot be sued to enforce the contract of purchase except by consent of the state? We hold that the authority given to make the contract carries with it, by necessary implication, the authority to enforce the contract by an action at law. Chesterfield County, supra* at 329, 187 S. E. at 550. (Emphasis added).

In accordance with our decision in *Chesterfield, supra,* we hold that wherever the State of South Carolina pursuant to statutory authority enters into a valid contract, the State implicitly consents to be sued and waives its sovereign immunity to the extent of its contractual obligations. To hold otherwise would be to endorse an obvious contradiction, for it cannot be true that the State is empowered to contract with individuals and yet retains the power to avoid its obligations. Neither the State nor its citizens can be bound, yet not bound, by a single contract.

Appellant contends, however, that Section 2-9-10 of the 1976 Code of Laws provides the exclusive remedy available to respondents. This section is as follows:

All claims for the payment for services rendered or supplies furnished to the State shall be presented to the State Budget and Control Board by petition, fully setting forth the facts upon which such claim is based, together with such evidence thereof as the Board may require. The petition shall be filed with the chairman of the Board at least twenty days prior to the convening of the General Assembly.

The foregoing statute was adopted pursuant to Article 17, Section 2, which states:

The General Assembly may direct, by law, in what manner claims against the State may be established and adjusted.

The argument of appellant, that Code Section 2-9-10 places exclusive jurisdiction in the State Budget and Control Board of the present action or claim, overlooks the provisions of Article 5, Section 7 of the State Constitution which places general jurisdiction in civil and criminal cases in the circuit court in the following language:

The Circut Court shall be a general trial court with original jurisdiction in civil and criminal cases, except those cases in which exclusive jurisdiction shall be given to inferior courts, . . . .

While there is serious question whether Article 17, Section 2 of the Constitution authorizes the General Assembly to remove jurisdiction of suits against the State from the jurisdiction of the circuit court as provided by Article 5, Section 7, this issue need not now be resolved for the General Assembly by Code Section 15-77-50 has clearly expressed its intent that the jurisdiction of civil actions against the State be placed in the circuit courts. This section states in pertient part:

The circuit courts of this State are hereby vested with jurisdiction to hear and determine all questions, actions and con-

troversies, . . ., affecting boards, commissions and agencies of this State, and officials of the State in their official capacities in the circuit where such question, action or controversy shall arise.

This section was construed in *Harrison v. S. C. Tax Commission,* 261 S. C. 302, 199 S. E. (2d) 763, as recognizing jurisdiction in the circuit court and providing for venue in cases in which the sovereign immunity doctrine is inapplicable.

The circuit court, therefore, clearly has jurisdiction to determine the present action.

■ Applying our conclusion to the case at bar we note that the General Assembly created the Department of Mental Health in 1964 and vested it with jurisdiction over the State's alcohol and drug addiction facilities. See Sections 44-9-10, 44-9-20 Code of Laws of South Carolina 1976. The governing board of the Department is authorized to ". . . form a body corporate in deed and in law with all the powers incident to corporations." Section 44-9-90, (1976 Code). Since the Department as a corporate body possesses statutory authority to contract, the contract at issue here was clearly authorized by law. The State by entering into this obligation provided, by implication, the necessary consent to be sued for any breach thereof.

■ The Department next argues that its demurrers should have been sustained on the ground that Article III, Section 30 of the South Carolina Constitution precludes suits in contract for damages above the contract price. Article III, Section 30 provides in pertinent part as follows:

The General Assembly shall never grant extra compensation, fee or allowance to any public officer, agent, servant or contractor after service rendered, or contract made, nor authorize payment or part payment of any claim under any contract not authorized by law . . .

On appeal from an order overruling a demurrer, this Court's review is limited to the allegations stated in the complaint, which are assumed to be true. *Ellett Bros., Inc. v. Manos,* 269 S. C. 581, 239 S. E. (2d) 75. From our examination of the complaints, we cannot say as a matter of law that the respondent's claims constitute demands for extra compensation within the proscription of Article III, Section 30. Accordingly, we make no determination as to the issue at the present time.

The order of the lower court is affirmed.

LITTLEJOHN, J., dissents.

LITTLEJOHN, Justice (dissenting):

I respectfully dissent and would reverse the order of the lower court.

The doctrine of sovereign immunity from actions on contract has long been recognized as the law in South Carolina. *Neal v. Suber,* 56 S. C. 298, 33 S. E. 463 (1898); *Harris v. Fulp,* 178 S. C. 332, 183 S. E. 158 (1935). Other states take a different view. No less than 13 states have adopted a rule contra to ours, including our sister state of North Carolina. *See Smith v. State,* 289 N. C. 303, 222 S. E. (2d) 412 (1976), and cases cited therein. *See, also,* 73 Am. Jur. (2d), *States, Territories and Dependencies,* § 118.

In *Harris v. Fulp, supra,* the order of the trial court, printed along with the opinion approving it, quoted from *Neal v. Suber, supra:*

". . . The counterclaim is a suit by Suber against the state penitentiary. A judgment could be paid only out of the state's resources. The state's resources are under the exclusive jurisdiction of the general assembly. This is no hardship on defendant. Every citizen who contracts with the agents of the state, as such, takes notice of the state's immunity from suit. The rule is a wise one. The revenues of the state would be subject to grievous hindrances, if they could be litigated by every citizen in the courts of the state." 183 S. E. at 160.

In my view article V, § 7 of our constitution is of no comfort to the plaintiff. That section, quoted in the majority opinion, does not confer upon a litigant a cause of action not otherwise authorized by law. It merely declares the circuit court to be ". . . a general trial court with original jurisdiction in civil and criminal cases, . . ."

Both our constitution and our statutory law have provided for the processing of claims such as those involved in this proceeding. Article XVII, § 2 of the present South Carolina Constitution (a similar version of which first appeared in the 1868 constitution as article XIV, § 4) provides:

"The General Assembly may direct, by law, in what manner claims against the State may be established and adjusted."

Within ten years of the adoption of Article XVI, § 4 of the 1868 Constitution, the legislature exercised its constitutional prerogative by enacting statutes presently codified as §§ 2-9-10 through 2-9-50, *Code of Laws of South Carolina* (1976). Section 2-9-10 provides:

"All claims for the payment for services rendered or supplies furnished to the State shall be presented to the State Budget and Control Board by petition, fully setting forth the facts upon which such claim is based, together with such evidence thereof as the Board may require."

While the case of *Chesterfield County v. State Highway Department of South Carolina,* 181 S. C. 323, 187 S. E. 548 (1936), is of interest, it is not authority for the position taken by the lower court and adopted by the majority opinion. It did not involve an action "for services rendered or supplies furnished to the State." In this action the respondents seek to recover payment for services rendered and supplies furnished to the State pursuant to the contract with the Department. In my view § 2-9-10 provides the exclusive remedy and the demurrer should have been sustained.

Without so stating the majority opinion, for all practical purposes, abolishes the doctrine of sovereign immunity as relates to contracts in this state. Substantially all contracts made by any state employee are expressly or impliedly authorized by law. Only unauthorized purchases and contracts would be exempt from suit.

Admittedly, pursuit of claims through the Budget and Control Board is not a practical approach. This is a matter to which the legislature might give appropriate attention. If the right to sue has constitutonal dignity by reason of Article 5, § 7, then the power of the Assembly to deal with claims is in serious doubt.