20009

John Hughes COOPER et al., Appellants, v. SOUTH CAROLINA PUBLIC SERVICE AUTHORITY, Respondent

(215 S. E. (2d) 197)

*F. Glenn Smith, Esq.,* of Columbia, *for Appellants,*

*Messrs. G. Dana Sinkler,* of Charleston, and *Wallace S. Murphy* and *Rembert C. Dennis,* of Moncks Corner, *for Respondent,*

May 8, 1975.

*Per Curiam:*

This is an appeal from an order of the circuit court granting summary judgment in favor of the respondent. The appellants assert that the lower court erred in holding that the respondent, South Carolina Public Service Authority had the power and authority to: (1) periodically harvest pulpwood and timber upon lands owned by it; (2) buy, sell and dispose of by lease any property real, personal or mixed or any interest therein, and that the power to buy and sell property included the power to swap.

In our view the decree of the circuit court properly and soundly disposed of the only contentions made here by the appellants. We accordingly publish such decree herewith and make such the judgment of this Court.

Affirmed.

## ORDER OF JUDGE GREGORY

This matter comes before me on cross Motions of the Petitioners and Respondent for Summary Judgment. In addition to the pleadings, the Respondent supports its Motion with the affidavit of Robert F. Petracca. Chief of the Forestry and Undeveloped Land Section of the Respondent Authority and a copy of a Concurrent Resolution of the General Assembly adopted in 1971. The Petitioners offer no supporting affidavits and rely entirely upon the pleadings.

The Complaint sets forth eight separate causes of action, the first four of which ask that the Respondent be permanently enjoined from cutting, removing and selling pulpwood from its properties on the grounds that such action is contrary to the Respondent's statutory duty, beyond its implied or specific authority and such action will cause the diminution in the value of those properties for the purpose of hunting, fishing and enjoyment of the natural aspects of said properties and is contrary to the policy of the State of South Carolina.

The Respondent "is a public corporation in the nature of a quasi municipal corporation, exercising certain governmental functions as an agency of the State." *Creech v. South Carolina Public Service Authority,* 200 S. C. 127, 20 S. E. (2d) 645, 648 (1942).

Section 59-8, Code of Laws of South Carolina, 1962, provides:

"The Public Service Authority is created primarily for the purpose of developing the Cooper River, the Santee River, the Congaree River and their tributaries upstream to the confluence of the Broad and Saluda Rivers and upstream on the Wateree River to a point at or near Camden and other similar projects as instrumentalities of intrastate, interstate and foreign commerce and navigation; of *reclaiming wastelands* by the elimination or control of flood waters, *reforesting the watersheds* of such rivers and improving public health conditions in those areas." (Emphasis added)

To accomplish these broad purposes the following powers were specifically granted the authority:

"(4) To acquire, purchase, hold, use, lease, mortgage, sell, transfer, and dispose of any property, real, personal or mixed, or any interest therein.

"(9) To reclaim and drain swampy and flooded lands.

"(10) To reforest the watersheds of the Cooper, Santee and Congaree Rivers and to prevent soil erosion and floods.

"(17) To make contracts of every name and nature and to execute all instruments necessary or convenient for the carrying on of its business:

"(20) To do all acts and things necessary or convenient to carry out the powers granted to it by this chapter or any other law." Section 59-3.

As noted above, the Act specifically charges the Authority with the responsibility of reclaiming flooded lands and reforesting the watersheds and grants it

express authority to achieve these purposes (Section 59-3(9), (10) but does not elaborate on the method it should employ in achieving the desired result. Accordingly, the manner to be employed in accomplishing the foregoing purposes is left to the discretion of the Respondent whose decision should not be disturbed except on showing of fraud or abuse of authority. Bobo v. City of Spartanburg, 230 S. C. 396, 96 S. E. (2d) 67 (1956) and *Carter v. City of Greenville,* 175 S. C. 130, 178 S. E. 508, *Green v. City of Rock Hill,* 149 S. C. 234, 147 S. E. 346.

It appears from the affidavit of Chief Forester Petracca, that the Respondent plants nothing but Loblolly and Slash pine trees in its forestry program and had planted about eight million pine seedlings. Mr. Petracca further states that pine trees must be thinned at regular intervals to enable them to grow properly and further points out that if the Respondent was engaging in the business of growing pine trees for their commercial value its forestry program would be based on a thirty year rotation instead of the sixty year rotation with ten year thining cycles as is presently employed by the Respondent. He further states that periodic thinning and harvesting is vital to any sound forestry program.

While the powers of the Authority are to be strictly construed, it is expressly granted the power "to do all acts and things necessary or convenient to carry out the powers granted to it by (the legislature) . . . " This is somewhat of an exception to the general law which holds "that powers merely convenient or useful are not implied if they are not essential having in view the nature and object of the incorporation." See *Creech, supra,* page 652.

The "public policy" relied on by the Petitioners is the Joint Resolution of the General Assembly, attached to Respondent's Motion for Summary Judgment. Reference thereto reveals that it is confined to a limited segment of the Respondent's properties lying within Calhoun and Sumter Counties and was to be effective for a period of one year from

the date of its adoption. It is, therefore, apparent that the moratorium declared by the General Assembly has no application to the overall timber management plan of the Respondent.

With reference to the Petitioner's assertion that the harvesting of pulpwood and timber is detrimental to hunting, fishing or enjoyment of the natural aspects of Respondent lands, the affidavit of Chief Forester Petracca states that the timber sales are coordinated with the Bureau of Sports Fisheries and Wildlife, U. S. Department of Interior, and the S. C. Wildlife and Marine Resources Department in all game-managed areas. In his opinion it is designed to enhance the aesthetic quality of the forests and to contribute to the effective management of wildlife therein. Any potential dangers to hunting, fishing and other forms of enjoyment of Respondent lands are matters which are easily controlled by contractual covenants and proper supervision.

This Court finds that the power of periodically harvesting pulpwood and timber is both necessary and convenient to the implementation of the duty and power of the Respondent to reclaim and reforest its lands and is certainly implied, if not expressed, under its legislative power to be exercised in the discretion of the Respondent.

It is accordingly Ordered that the Respondent have judgment on the first four causes of action and the same are hereby dismissed.

The fifth, sixth, seventh and eighth causes of action challenge the Respondent's authority to lease, rent, sell, or swap or otherwise make available any of its properties.

Section 59-3 (4) grants the Authority the power:

"To acquire, purchase, hold, use, lease, mortgage, sell, transfer, and dispose of any property, real, personal or mixed, or any interest therein."

This is further explained in the final paragraph of Section 59-3, which provides:

"The powers herein conferred upon the board of directors shall not be construed to give the board of directors the power to sell, except by way of mortgage or deed of trust, all of the physical property of the Authority, but the board of directors may sell any surplus property which it may acquire and which said board of directors shall deem not to be necessary for the purpose of the development."

The words "acquire" and "purchase", as set forth in the statutory provision quoted above, refer to methods of acquisition. Those words are followed by the words "hold" and "use", referring to methods of occupancy. It, therefore, follows that the words "lease, mortgage, sell, transfer and dispose" refer to methods, of disposition. Accordingly, I find that Respondent is granted the specific statutory authority to buy, sell and dispose of by lease any property, real, personal, or mixed, or any interest therein. The power to buy and sell includes the power to swap. *Carter v. City of Greenville, supra,* and *Bobo v. City of Spartanburg, supra.*

The Petition does not allege that Respondent is acquiring or has acquired lands for the purpose of engaging in the business of selling or leasing such lands to others, it merely alleged that the Respondent has leased and sold tracts of lands to others and is about to consummate a swap of some of its real property. While it is true as a general rule that a municipal corporation may not sell, trade or lease its property held for public purposes without specific or implied authority to do so, it is also a general rule that a municipal corporation may, if granted the general power to buy, sell, lease or exchange property, dispose of such property as may be surplus to its needs and not immediately necessary for public purposes. 63 A. L. R. 614 and 133 A. L. R. 1241. The discretion of the governing body of the municipal corporation in this regard should not be disturbed in the absence of illegality, fraud or clear abuse of authority. *Haesloop v. City Council of Charleston,* 123 S. C.

272, 115 S. E. 596, *Carter v. City of Greenville, supra,* and *Bobo v. City of Spartanburg, supra.*

In addition, the final paragraph of Section 59-3 confers upoh Respondent board of directors the power to sell any surplus property which it may acquire and which said board of directors shall deem not to be necessary for Respondent's purposes.

I, therefore, find for the Respondent as to causes of action five, six, seven and eight and it is hereby Ordered those causes of action be dismissed.