23839

Chester C. WILLIAMS and Arlene B. Williams, Appellants v. The TOWN OF HILTON HEAD ISLAND, SOUTH CAROLINA, Respondent.

(429 S.E. (2d) 802)

Supreme Court

*Terry A. Finger,* Hilton Head Island, *for appellants.*

*Curtis L. Coltrane,* of *Wilson & Coltrane, P.A.,* Hilton Head Island, *for respondent.*

*Roy D. Bates,* Columbia, *for amicus curiae Municipal Ass'n of South Carolina.*

Heard Nov. 4, 1992.

Decided April 12, 1993.

FINNEY, Justice:

Appellants Chester C. Williams and Arlene Williams appeal the order of the Master-in-Equity upholding the constitutionality of a real estate transfer fee imposed by Respondent Town of Hilton Head Island, South Carolina. We affirm.

Appellants commenced this action on June 7, 1991, pursuant to the Uniform Declaratory Judgment Acts, S.C. Code Ann. § 15-53-10, et seq. (1976), seeking to have the Real Estate Transfer Fee Ordinance, Hilton Head Island Code, § 4-5-10, et, seq. (1983) (the ordinance), declared illegal, unconstitutional and void on the ground that it levies a tax on the transfer of realty without statutory authority. The ordinance requires purchasers of real property situated in the Town of Hilton Head Island to pay the respondent a transfer fee equal to one-fourth of one percent of the purchase price.

The respondent answered, alleging that enactment of the ordinance was a valid exercise of "Home Rule" authority conferred upon municipalities under the provisions of Article VIII, Section 9 of South Carolina Constitution.

The case was referred to the master under an order authorizing the entry of final judgment, with direct appeal to this Court, and submitted to the master upon a stipulation of facts. By order dated March 6, 1992, the master declared the transfer fee constitutional. The master concluded that the 1973 amendment to the South Carolina Constitution, Art. VIII, § 1, et. seq., which authorized home rule for counties and municipalities was given effect by subsequently-enacted legislation. The master held that, when read together, Art. VIII, § 7, S.C. Const. and S.C. Code Ann. § 5-7-30 (Supp. 1991) confer authority to enact the ordinance.

On appeal, the issues before this Court are 1) whether or not the "Home Rule" amendments of Article VIII of the South Carolina Constitution confer upon respondent the power to adopt the ordinance, or whether there still exists the requirement for express statutory authorization; and 2) is the purchase of the land with revenue generated from the transfer fee necessary and proper for the security, general welfare and convenience of the municipality or for the preservation of its health, peace, order and good government.

Respondent contends the ordinance was passed under authority of the "Home Rule" Amendments, which state:

> The General Assembly shall provide by general law for the structure, organization, powers, duties, functions and the responsibilities of counties, including the power to tax different areas at different rates of taxation related to the nature and level of *governmental services* provided. . . . (Emphasis added.)

Art. VIII, § 7, S.C. Const.

> The provisions of this Constitution and all laws concerning local government shall be liberally construed in their favor. Powers, duties, and responsibilities granted local government subdivisions by this Constitution and by law shall include those fairly implied and not prohibited by this Constitution.

Art. VIII, § 17, S.C. Const.

Subsequent to the foregoing amendments, our legislature enacted S.C. Code Ann. § 5-7-30, which provides in pertinent part:

> Each municipality of the State . . . may enact regulations, resolutions, and ordinances, not inconsistent with the Constitution and general law of this State, including the exercise of powers in relation to roads, streets, markets, law enforcement, health and order in the municipality or respecting any subject which appears to it *necessary and proper* for the security, general welfare, and convenience of the municipality or for preserving health, peace, order and good government in it, including the authority to levy and collect taxes on real and personal property and as

otherwise authorized in this section, make assessments, and establish uniform services charges relating to them. . . .

Appellants argue that Dillon's Rule[1] has not been supplanted by subsequent Constitutional amendments or legislation; hence, the ordinance is invalid in the absence of express or implied enabling statutory authority.

Prior to the Constitutional amendments, Dillon's Rule provided the controlling standard of judicial construction with regard to powers vested in municipal corporations; the relevant portion of which states:

A municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; Second, those necessarily or fairly implied in or incident to the powers expressly granted; Third, those essential to the accomplishment of the declared objects and purposes of the corporation, not simply convenient, but indispensable.

*Blake v. Walker*, 23 S.C. Reports 517 (1885); *Creech v. South Carolina Pub. Ser. Authority*, 200 S.C. 127, 20 S.E. (2d) 645 (1942). Thus, the issue becomes whether or not, by enacting Section 5-7-30, the legislature abolished the doctrine of Dillon's Rule.

An elementary and cardinal rule of statutory construction is that courts must ascertain and effectuate the actual intent of the legislature. *Horn v. Davis Electrical Constructors, Inc.*, — S.C. —, 416 S.E. (2d) 634 (1992); *Browning v. Hartvigsen*, — S.C. —, 414 S.E. (2d) 115 (1992). Additionally, the Last Legislative Expression Rule requires that in instances where it is not possible to harmonize two sections of a statute, the later legislation supersedes the earlier enactment. *Jolly v. Atlantic Greyhound Corp.*, 215 S.C. 193, 54 S.E. (2d) 777 (1949). In *Southern Bell Telephone and Telegraph Company v. City of Aiken*, 279 S.C. 269, 306 S.E. (2d) 220 (1983), this Court determined that Article VIII of the South

---

[1] "Dillon's Rule" originated with John F. Dillon, former Chief Justice of the Supreme Court of Iowa and former circuit judge for the United States Eighth Judicial Circuit. *See* John F. Dillon, *Commentaries on the Law of Municipal Corporations* (5th ed.), § 237, p. 448 (1911).

Carolina Constitution was completely revised for the purpose of accomplishing home rule; thus granting renewed autonomy to local government.

This issue has been considered by other jurisdictions with subsequently enacted "Home Rule" legislation. The Iowa Supreme Court in *Kasparek v. Johnson County Bd. of Health*, 288 N.W. (2d) 511 (Iowa 1980), held that Dillon's Rule is no longer valid following adoption of home rule amendments. Alaska's Court of Appeals considered the continued applicability of Dillon's Rule in *Simpson v. Municipality of Anchorage*, 635 P. (2d) 1197 (1981), and noted the consistency of the holding that home rule constitutional provisions were adopted in order to abrogate traditional restrictions on the exercise of local autonomy. *Id.* at 1200.

This Court concludes that by enacting the Home Rule Act, S.C. Code Ann. § 5-7-10, et. seq. (1976), the legislature intended to abolish the application of Dillon's Rule in South Carolina and restore autonomy to local government. We are persuaded that, taken together, Article VIII and Section 5-7-30 bestow upon municipalities the authority to enact regulations for government services deemed necessary and proper for the security, general welfare and convenience of the municipality or for preserving health, peace, order and good government, obviating the requirements for further specific statutory authorization so long as such regulations are not inconsistent with the Constitution and general law of the state.

As to the second issue, the *Hilton Head Island Code*, § 4-5-40 (1983), provides that the purpose of the ordinance shall be:

(a) To acquire fee and less than fee interest in land while it is still available to be held in perpetuity as wildlife preserves or believed to be needed by the public in the future for active and passive recreation uses and scenic easements . . . and land for future public recreational facilities.

(b) to acquire already developed land or development rights in order to convert its use to a public use, to restore the property to open space, or to redefine that property in accordance with the town's current comprehensive plan and dispose of it as soon as possible.

The master concluded that the purpose of the ordinance is within the "necessary and proper" definition of Section 5-7-30. Therefore, the collection and expenditure of revenue derived from transfer fees to acquire land is necessary and proper for the general welfare of the citizens of Hilton Head Island.

We find that the stated purpose of the ordinance is encompassed by section 5-7-30. Moreover, the thrust of the ordinance comports with the general scheme, policies, legislation and prevailing law of the state to protect, develop and preserve the coastal region for the benefit of the public and posterity. We hold that using revenue derived from transfer fees for the purposes stated in the ordinance does not constitute a violation of the constitution or general law of South Carolina.

For the foregoing reasons, we affirm the order of the master.

Affirmed.

HARWELL, C.J., and CHANDLER, TOAL and MOORE, JJ., concur.