661 S.E.2d 349

**Delmore CAIN, Appellant,**

v.

**NATIONWIDE PROPERTY AND CASUALTY INSURANCE COMPANY, Respondent.**

No. 26491.

Supreme Court of South Carolina.

Heard April 3, 2008.

Decided May 12, 2008.

Rehearing Denied June 12, 2008.

Gary W. Popwell, Jr., of Lee, Eadon, Isgett & Popwell, of Columbia, for Appellant.

J.R. Murphy, of Murphy & Grantland, of Columbia, for Respondent.

Justice BEATTY:

In this insurance case, Delmore Cain appeals the circuit court's order denying him uninsured motorist proceeds pursuant to a compensation section in the South Carolina Tort Claims Act. We affirm.

## FACTS

The parties essentially agree to the facts of this case, leaving the Court solely with a matter of statutory construction.

On April 21, 2003, the work vehicle in which Delmore Cain was a passenger was hit head-on by a Richland County dump truck that crossed the center line. Cain suffered serious injuries to his head, chest, hips, and legs, which will require years of medical treatment and caused him "physical pain, suffering, mental anguish, emotional distress and impairment of health and bodily efficiency." Cain sought damages for his injuries and future medical costs against Richland County. Richland County carried insurance on the dump truck in an amount exceeding the minimum limits required by law. The parties settled the lawsuit, and Cain received $300,000, which is the maximum amount allowed under the South Carolina Tort Claims Act.[1] He also received $40,000 from the underinsured motorist coverage policy covering the vehicle in which he was a passenger.

The parties to the underlying case stipulate Cain's damages exceeded $370,000. At the time of the accident, Cain was covered under an automobile policy issued by Nationwide Property and Casualty Insurance Company that contained uninsured motorist coverage in the amount of $15,000 per person for each insured vehicle. The policy holder specifically refused underinsured motorist coverage.[2] The policy defined "uninsured motor vehicle" as one which does not have liability coverage in the minimum amounts required by the law where the insured's car is principally located. The policy went on to state that Nationwide does not consider as an uninsured vehicle: a motor vehicle owned by the government or an agency; or a vehicle defined as underinsured. The policy defined "underinsured motor vehicle" as one for which liability coverage meets the minimum amounts required by law but is in an amount less than the insured's damages.

---

1. The South Carolina Tort Claims Act caps liability for damages caused by a governmental agency at $300,000 for a single occurrence. S.C.Code Ann. § 15–78–120(a)(1) (2005).

2. The policy was issued to Lekettia Pough and it included Cain as one of the named drivers.

The underlying claim[3] arose when Cain filed a declaratory judgment action against Nationwide to determine whether Nationwide was required to pay $30,000 in uninsured motorist coverage for Cain's remaining damages pursuant to the Tort Claims Act and section 15–78–190 of the South Carolina Code.

After a hearing on the declaratory judgment action, the circuit court issued an order in favor of Nationwide. Noting Cain's admission that he did not have underinsured motorist coverage, the court found the dump truck did not meet the definition of an "uninsured" vehicle under either the policy or under the automobile insurance statute. In interpreting section 15–78–190, the court also held Cain was not entitled to uninsured motorist coverage. Cain appealed. The Court of Appeals certified the case to this Court.

## DISCUSSION

Cain first argues the circuit court erred in interpreting section 15–78–190. He asserts the statute: (1) should be read as a separate and distinct requirement of insurance carriers; (2) was intended to assuage the hardship on a plaintiff who cannot be fully compensated because damages exceed the statutory cap in Tort Claims Act cases; and (3) was not merely a restatement of an injured party's right to obtain compensation under his uninsured and underinsured motorist coverage. Cain also argues the court erred in turning to the definitions found within the insurance statutes and his uninsured motorist policy to determine he could not recover under section 15–78–190. Because these two issues deal with interrelated matters, we have addressed them as one in this discussion.

The primary purpose in interpreting statutes is to ascertain the intent of the Legislature. *Hodges v. Rainey,* 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). "We cannot construe a statute without regard to its plain and ordinary meaning, and this Court may not resort to subtle or forced construction in an attempt to limit or expand a statute's scope." *New York*

3. Brenda Cain, Delmore's wife, was also a passenger in the vehicle and also suffered serious injuries. Although she was a party in the lawsuit against Richland County, she was not a party in the underlying claim against Nationwide.

*Times Co. v. Spartanburg County Sch. Dist. No. 7,* 374 S.C. 307, 310, 649 S.E.2d 28, 29–30 (2007). "Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Hodges,* 341 S.C. at 85, 533 S.E.2d at 581. The statute's language is considered the best evidence of legislative intent. *Id.* However, the Court will reject the plain meaning of the words used in a statute if it would lead to an absurd result and will "construe the statute so as to escape the absurdity and carry the intention into effect." *Ray Bell Constr. Co. v. Sch. Dist. of Greenville County,* 331 S.C. 19, 26, 501 S.E.2d 725, 729 (1998). Further, when a plain reading of the statute "lends itself to two equally logical interpretations, this Court must apply the rules of statutory interpretation to resolve the ambiguity and to discover the intent of the General Assembly." *Kennedy v. South Carolina Ret. Sys.,* 345 S.C. 339, 348, 549 S.E.2d 243, 247 (2001).

Section 15–78–190, which is part of the Tort Claims Act, is encaptioned: "Compensation of plaintiff pursuant to underinsured *or* uninsured defendant provisions of plaintiff's insurance policy."[4] (emphasis added). The section states, in relevant part, as follows:

> If the amount of the verdict or judgment is not satisfied by reason of the monetary limitations of this chapter upon recovery from the State or political subdivision thereof, the plaintiff's insurance company, *subject to the underinsured and uninsured defendant provisions of the plaintiff's insurance policy, if any, shall compensate the plaintiff for the difference* between the amount of the verdict or judgment and the payment by the political subdivision. If a cause of action is barred under § 15–78–60 of the 1976 Code, the plaintiff's insurance company must compensate him for his losses subject to the aforementioned provisions of his insurance policy.

S.C.Code Ann. § 15–78–190 (2005) (emphasis added).

■ A clear reading of the statute shows that the purpose is to allow injured parties with damages above the statutory

---

4. It is interesting to note that Act 463, enacting the Tort Claims Act, just listed this section as "Plaintiff to be compensated." 1986 S.C. Acts 463, § 6.

cap in the Tort Claims Act to obtain further compensation. While Cain argues the statute was intended to compensate all persons with damages above the statutory cap in a Tort Claims Act case, regardless of whether they meet the statutory or policy definitions for uninsured or underinsured defendant coverage, we take the more limited view that it was intended only to allow compensation where the definitions were met.

Section 15–78–20 contains the declaration of public policy for the enactment of the Tort Claims Act and states that "[t]he remedy provided by this chapter is the *exclusive civil remedy* available for any tort committed by a governmental entity, its employees, or its agents except as provided in § 15–78–70(b)." S.C.Code Ann. § 15–78–20(b) (2005) (emphasis added). While limiting recovery under the Tort Claims Act as the sole method of obtaining compensation *from the government* is not unusual, the uninsured motorist and underinsured motorist insurance arena is unique. Certainly, the sole purpose of the existence of these kinds of insurance is to provide compensation where the at-fault motorist either is not insured or does not have enough insurance. Thus, by enacting section 15–78–190, the Legislature assured that an insurance company could not cite the "exclusive civil remedy" portion of section 15–78–20 to deny payment from the plaintiff's uninsured or underinsured motorist coverage where recovery pursuant to the Tort Claims Act was insufficient. Injured parties are free to seek recovery under their underinsured or uninsured motorist policies any time recovery from the at-fault motorist is insufficient, and section 15–78–190 was specifically intended to inform insurance companies that nothing changes when an at-fault government vehicle is involved. Thus, the enactment of this section, which appears to restate portions of other sections in the Insurance Code, was not redundant.[5] *Steinke v. S.C. Dep't of Labor, Licensing, & Regulation*, 336 S.C. 373, 396, 520 S.E.2d 142, 154 (1999) ("While provisions establishing limitations upon and exemptions from liability of a governmen-

---

5. *See* S.C.Code Ann. § 38–77–150 (2002) (providing that an insured may select "uninsured motorist coverage" and proceed under the section to obtain damages from the owner of an uninsured vehicle); S.C.Code Ann. § 38–77–160 (2002) (providing recovery under "underinsured motorist coverage").

tal entity must be liberally construed to limit liability, we also must presume in construing a statute that the Legislature did not intend to perform a futile thing.").

■ Considering the facts of this case, 15–78–190 would be applicable if an uninsured or underinsured at-fault government vehicle is involved. Both "underinsured motorist" and "uninsured motorist" are terms statutorily defined in the Insurance Code.[6] Section 15–78–190 provides that recovery is "subject to" the terms of the insured's underinsured or uninsured policy. Thus, in order to recover, the plaintiff must first meet the requirements and terms found both in the statute and within the policy, assuming the policy provisions do not violate the law or public policy of this State. In most instances, this will necessarily limit recovery to an injured party who meets the definitions.

■ Turning to the instant case, we agree with the circuit court that Cain was not entitled to recover under the "uninsured motorist" section of his policy. Strictly applying the statutory and policy definitions, it is apparent that the dump truck was an "underinsured" vehicle because the dump truck

---

6.  Similar to the definition found in the Nationwide policy, our Legislature has defined an "underinsured motor vehicle" as one where "there is bodily injury liability insurance or a bond applicable at the time of the accident in an amount of at least that specified in Section 38–77–140 and the amount of the insurance or bond is less than the amount of the insured's damages." S.C.Code Ann. § 38–77–30(15) (2002). An "uninsured motor vehicle" is one as to which:

    (a) there is not bodily injury liability insurance and property damage liability insurance both at least in the amounts specified in Section 38–77–140, or
    (b) there is nominally that insurance, but the insurer writing the same successfully denies coverage thereunder, or
    (c) there was that insurance, but the insurer who wrote the same is declared insolvent, or is in delinquency proceedings, suspension, or receivership, or is proven unable fully to respond to a judgment, and
    (d) there is no bond or deposit of cash or securities in lieu of the bodily injury and property damage liability insurance.
    (e) the owner of the motor vehicle has not qualified as a self-insurer in accordance with the applicable provisions of law.
    . . .
    Any motor vehicle owned by the State or any of its political subdivisions is considered an uninsured motor vehicle when the vehicle is operated by a person without proper authorization.
    S.C.Code Ann. § 38–77–30(14) (2002).

had insurance protection greater than the minimum limits but less than Cain's damages.[7] Cain admitted that he did not have "underinsured motorist" coverage on his policy. Because recovery under section 15–78–190 is subject to the requirements in his policy, Cain failed to meet the definitions and cannot recover.

## CONCLUSION

While we sympathize with Cain's need for further compensation, we cannot ignore the clear meaning attached to the terms "underinsured" and "uninsured" contained within section 15–78–190. It is evident the Legislature intended this section to prevent insurers from denying further compensation above amounts recovered pursuant to the Tort Claims Act. Thus, it does not change the fact that recovery is limited to situations where the policy terms are met. Accordingly, the circuit court's order denying recovery is

**AFFIRMED.**

TOAL, C.J., MOORE, WALLER, JJ., and Acting Justice DIANE SCHAFER GOODSTEIN, concur.

---

7. In fact, Cain stipulates in his brief that the dump truck does not meet either definition of an "uninsured" vehicle. He argues, however, that it does not matter for purposes of recovery under section 15–78–190.