# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

Ex Parte: South Carolina Department of Disabilities and Special Needs, Appellant,

In re: State of South Carolina, Respondent,

v.

Rocky A. Linkhorn, Respondent.

Appellate Case No. 2013-002208

<hr>

Appeal From Lexington County
J. Michael Baxley, Circuit Court Judge

<hr>

Opinion No. 27684
Heard December 3, 2015 – Filed November 16, 2016

<hr>

**REVERSED**

<hr>

Andrew F. Lindemann and William H. Davidson, II, both of Davidson & Lindemann, P.A., of Columbia; General Counsel Tana G. Vanderbilt, of South Carolina Department of Disabilities and Special Needs, of Columbia, for Appellant.

Attorney General Alan M. Wilson, Deputy Solicitor General J. Emory Smith, Jr., and Assistant Attorney General T. Parkin Hunter, all of Columbia, and Public Defender Elizabeth C. Fullwood, of Lexington, for Respondents.

<hr>

**JUSTICE BEATTY:** Rocky A. Linkhorn was arrested and charged with Criminal Sexual Conduct with a Minor in the First Degree, Lewd Act on a Minor, and Disseminating Obscene Material to a Minor. After finding Linkhorn was incompetent to stand trial and unlikely to become fit in the foreseeable future, the circuit court ordered the solicitor to initiate judicial admission proceedings in the probate court to have Linkhorn involuntarily committed to the South Carolina Department of Disabilities and Special Needs ("DDSN"). Before the probate court determined whether Linkhorn was intellectually disabled, the solicitor filed a motion for a rule to show cause in the circuit court, requesting DDSN be ruled into court "to show just cause for services being denied to [Linkhorn] as previously ordered." The circuit court granted the solicitor's motion and ordered DDSN to, *inter alia*, take custody of Linkhorn and house him in a secure facility until the probate court determines whether Linkhorn is intellectually disabled. Additionally, the court prohibited DDSN from refusing involuntary commitment of individuals similarly situated to Linkhorn. DDSN appealed. We certified the appeal pursuant to Rule 204(b), SCACR. For reasons which will be discussed, we reverse.

## I.      Discussion

This case concerns the application of the South Carolina Intellectual Disability, Related Disabilities, Head Injuries, and Spinal Cord Injuries Act[1] ("Act") and certain provisions under Title 44, Chapter 23 of the South Carolina Code. The Act and Title 44, Chapter 23 contain competing definitions of the term "intellectual disability." The crux of the issue before the Court is which definition is applicable to Linkhorn.

A long recitation of the facts and the tortured procedural history of this case are unnecessary to determine the resolution of the ultimate issue presented. The uncontroverted evidence shows that Linkhorn suffers from dementia caused by an anoxic brain injury resulting from Linkhorn's attempt to hang himself. Linkhorn has numerous cognitive and intellectual deficits in addition to slow speech and difficulty performing certain motor activities. It is noteworthy that Linkhorn's disability did not manifest until he was twenty-three years of age.

### A. Statutory Overview

Title 44, Chapter 23 outlines, *inter alia*, the procedures for individuals found unfit to stand trial. These provisions apply to both the mentally ill and persons

---

[1]  S.C. Code Ann. §§ 44-20-10 to -1170 (Supp. 2015).

with intellectual disabilities.[2]   Under *this* Chapter, "person with intellectual disability" is defined as:

> a person, other than a person with a mental illness primarily in need of mental health services, whose inadequately developed or impaired intelligence and adaptive level of behavior require for the person's benefit, or that of the public, special training, education, supervision, treatment, care, or control in the person's home or community or in a service facility or program under the control and management of the Department of Disabilities and Special Needs.

S.C. Code Ann. § 44-23-10(21) (Supp. 2015).  This definition does not have an age limitation.  The General Assembly limited the application of this definition to Title 44, Chapters 9, 11, 13, 17, 23, 24, 27, 48, and 52.  *Id.* § 44-23-10 (Supp. 2015).  Notably absent from this list is Title 44, Chapter 20.

The Act sets forth specific procedures applicable to judicial admission proceedings concerning the involuntary commitment of an individual to DDSN once the individual is found unfit to stand trial.  S.C. Code Ann. § 44-20-450 (Supp. 2015).  Under section 44-20-450(A)(8) of the Act, if an individual is found unfit to stand trial, the solicitor responsible for the criminal prosecution pursuant to section 44-23-430 is authorized to initiate judicial admission proceedings for the involuntary commitment of the individual to DDSN as long as the individual has an "intellectual disability" or "related disability."   "Intellectual disability" is defined *under the Act* as "significantly sub average general intellectual functioning existing concurrently with deficits in adaptive behavior and ***manifested during the developmental period***."[3]   *Id.* § 44-20-30(12) (Supp. 2015) (emphasis added).  A "related disability" is defined as:

---

[2]  Prior to this appeal, the probate court determined Linkhorn was not mentally ill.  Neither party disputes this determination.  Therefore, while provisions of Title 44, Chapter 23 apply to both the mentally ill and people with intellectual disabilities, we limit our review of this authority to its application to individuals with intellectual disabilities.

[3]  In 2011, the General Assembly substituted the term "mental retardation" with "intellectual disability."  Act No. 47, 2011 S.C. Acts 172.  The definition of the term stayed the same.  Act No. 47, 2011 S.C. Acts 172, 176. The General Assembly has not defined the term "developmental period."  However, since the term was part of the same definition previously used to define mental retardation,

A severe, chronic condition found to be closely related to intellectual disability or to require treatment similar to that required for persons with intellectual disability and must meet the following conditions:

(a) It is attributable to cerebral palsy, epilepsy, autism, or any other condition other than mental illness found to be closely related to intellectual disability because this condition results in impairment of general intellectual functioning or adaptive behavior similar to that of persons with intellectual disability and requires treatment or services similar to those required for these persons.

(b) It is *manifested before twenty-two years of age*.

(c) It is likely to continue indefinitely.

(d) It results in substantial functional limitations in three or more of the following areas of major life activity: self-care, understanding and use of language, learning, mobility, self-direction, and capacity for independent living.

*Id*. § 44-20-30(15) (Supp. 2015) (emphasis added).

If the court determines the individual has an intellectual disability or related disability, the court shall order the individual "be admitted to the jurisdiction of [DDSN] as soon as necessary services are available."  S.C. Code Ann. § 44-20-

which has generally been accepted as a condition occurring prior to age eighteen, we believe the General Assembly intended for the same age limitation to apply to intellectual disabilities.  *See the American Association on Intellectual and Developmental Disabilities*, Definition of Intellectual Disability, http://aaidd.org/intellectual-disability/definition#.V7NoXE32Y5s (last visited on Aug. 16, 2016) (defining "intellectual disability" as "a disability characterized by significant limitations in both intellectual functioning and in adaptive behavior, which covers many everyday social and practical skills.  This disability originates before the age of 18").  Our belief is also supported by the expert testimony of psychiatrist Dr. Richard Frierson in this case.  During the hearing on the rule to show cause motion, Dr. Frierson opined that a condition which does not manifest prior to the age of eighteen is not "the same intellectual disability that has been [previously] referred to as mental retardation."

450(E) (Supp. 2015).  If, however, the court determines the individual does not have an "intellectual disability or a related disability to an extent which would require commitment, it shall terminate the proceeding and dismiss the petition." *Id*. § 44-20-450(D) (Supp. 2015).

While the Act also applies to individuals with "head injuries" and "spinal cord injuries," the provisions of the Act concerning the *involuntary* commitment of individuals to DDSN only apply to those with an intellectual disability or a related disability.  *Id*. § 44-20-450 (Supp. 2015).  Therefore, those individuals with a head injury or spinal cord injury can only be *voluntarily* committed to DDSN.

## B. "Intellectual Disability"

DDSN contends the circuit court erred in applying the definition of "person with intellectual disability" under section 44-23-10(21) to the determination of this case.  We agree.

"Where the statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000).

We find the statutes concerning the involuntary commitment of individuals to DDSN are clear and unambiguous.  Under the Act, only individuals who developed an "intellectual disability" during the developmental period or a "related disability" before the age of twenty-two can be involuntarily committed to DDSN.

Our finding is supported by the General Assembly's exclusion of the Act from the list of chapters to which the broad definition of "person with intellectual disability" may apply.  *See* S.C. Code Ann. § 44-23-10 (Supp. 2015) (stating that the definitions within Chapter 23 also apply to "Chapter 9, Chapter 11, Chapter 13, Articles 3, 5, 7, and 9 of Chapter 17, Chapter 24, Chapter 27, Chapter 48, and Chapter 52, unless the context clearly indicates a different meaning").  Chapter 20 is not included.

Respondents argue this is an absurd result given, in part, the language of section 44-23-220, which states:  "[n]o person who is mentally ill or who has an intellectual disability shall be confined for safekeeping in any jail."  S.C. Code Ann. § 44-23-220 (Supp. 2015).  We disagree.  Respondents overlook the language from the Act which states "No person with intellectual disability or a related

disability must be confined in jail ***unless there is a criminal charge pending against him***." S.C. Code Ann. § 44-20-450(G) (Supp. 2015) (emphasis added). Thus, based on our interpretation of the statutes, we conclude that if an individual cannot be involuntarily committed to DDSN following judicial admission proceedings, the individual *may* be confined in jail if there are criminal charges pending against him.

As this Court has acknowledged, "it is not the court's place to change the meaning of a clear and unambiguous statute." *Hodges*, 341 S.C. at 85, 533 S.E.2d at 581. Consequently, we reverse the circuit court's decision, finding it erred in applying the definition of "person with intellectual disability" as defined in section 44-23-10(21) to this case. Instead, we hold the proper definition to apply in involuntary commitment proceedings to DDSN is the definition of "intellectual disability" as defined in section 44-20-30(12) under the Act. We are constrained to recognize that the General Assembly has failed to provide for involuntary commitment to DDSN for any defendant who did not manifest his condition before age twenty-two.

## II.    Conclusion

In conclusion, we hold the circuit court erred in applying the broad definition of "person with intellectual disability" found in section 44-23-10 to Linkhorn. Because this issue is dispositive of the appeal, we decline to address DDSN's remaining arguments.[4] Accordingly, we reverse the decision of the circuit court.

**REVERSED**.

**PLEICONES, C.J., KITTREDGE, HEARN, JJ., and Acting Justice Jean H. Toal, concur.**

---

[4] *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (providing this Court need not address remaining issues when disposition of prior issue is dispositive of the appeal).